CASE 4—EQUITY—FEBRUARY 22, 1883.

# Fant v. Talbot, &c.

APPEAL FROM WARREN CIRCUIT COURT.

1. Although appellee Hise intended to remove upon the land claimed by him as a homestead, and did actually remove upon it after it was sold under an execution, the occupancy was too late to give him a homestead.

2. A mere intention to move upon land and make it a residence does not create a right to a homestead under the statute.

B. F. PROCTER AND E. W. HINES FOR APPELLANT.

It is proved beyond controversy that appellee Hise never occupied the land claimed by him as a homestead until after it was sold under appellant's execution against him. It was then too late to claim a homestead. (Gen. Stat., ch. 38, art. 13, sec. 9; Hansford v. Holdam, 14 Bush, 210; Nichols v. Sennett, 78 Ky., 630; 4 Bush, 50; Carter v. Goodman, 11 Bush, 232.)

HALSELL & MITCHELL FOR APPELLEES.

Appellee Hise is, and was, a *bona fide* housekeeper when the land was sold. He improved it with the *bona fide* intent to make it his home, and did make it his home after the execution sale. (Nichols v. Sennett, 78 Ky., 630; Gen. Stat., ch. 38, art. 13, sec. 16.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The right of the appellee Hise to a homestead in the land in controversy is the only question involved in this case.

In the year 1874 Hise purchased the land in controversy of one Young, and, some years after the sale, a conveyance was made without reserving a lien for the purchase-money. An execution issued upon a judgment in favor of the appellant against Hise that was levied on the land, the land sold, and, upon the failure to redeem by Hise, a conveyance was made to the purchaser by the sheriff. The judgment was rendered against Hise in November, 1878, and the sale was made under the execution in September, 1879; and in the month of December following, about Christmas, Hise moved

upon the land with his family, and is now claiming a homestead as against the purchaser under the execution. The court below gave him a homestead, and hence the appeal.

The proof shows that the appellee Hise lived on the farm of Talbot, about one quarter of a mile from his land, and had resided there for years previous to the sale made by the sheriff.

A double log cabin had been erected on the land of Hise by one Herndon, who claims to have purchased four acres of it from Hise. Herndon lived there for some time, and then abandoned it. Hise also began to build another cabin on the same place, and is now living on the land. He claims that it has always been his purpose to move on this land, and that he claimed it as a homestead from the date of his purchase, and kept upon it his stock, and made improvements, such as stables, out-houses, &c. The proof conduces to show that all the improvements of any value were made by Herndon under his purchase, and the right to a homestead must be denied unless the intention of the appellee to occupy the premises is to control the case; and it is immaterial whether the improvements were made by Herndon or by the appellee. It is certain that the appellee never occupied the premises with his family; that he never lived upon the land; but that it was his intention to make it his home at some future time is manifest; and we think the purchase by the appellant hastened the execution of that purpose.

We have no doubt but that cases may occur, when the debtor is in the act of removing on premises with the intention of making it his homestead, where the creditor would be denied the right to subject it, as where the debtor has sold his homestead and is removing to another, or where he is allowed the value of the homestead by the chancellor and

purchases another, time .must be given him to make the removal, otherwise the very object of the law would, in many cases, be disregarded; but we know of no case decided by this court where the mere intention of a debtor, who has never lived on the land with his family, to make it his home, is sufficient to entitle him to a homestead as against a creditor who has levied upon and sold it before the debtor moves upon it. There is no doubt but that appellant purchased this land as a home for himself and family, and he may have had the improvements made for that purpose, still he had been living on land adjoining belonging to another for many years, and the intention to occupy his own land as a homestead was never attempted to be consummated until the creditor had purchased it. To give the appellee a homestead would be a dangerous precedent to establish in this class of cases, as the intention within the breast alone of the debtor would scarcely ever develop so as to be known to the creditor until he had seized upon the land of the debtor to satisfy his debt. While a case of seeming hardship may now and then occur under the rule as here established, a contrary doctrine would invite fraudulent claims to homesteads, upon a character of testimony that could scarcely in any case be disproved. The homestead right is never forfeited when there has been an occupancy and then a temporary removal, with an intention to return and make the premises a home; but where there has never been an occupancy, that is, a residence by the owner upon the land with his family as a home, but a mere intention to do so at some future time, he acquires no right to a homestead, and such is the case here. The intention to make it his home doubtless existed; but this is not sufficient, and the chancellor therefore erred in canceling the conveyance made

to the appellant.   (See Hansford v. Holdam, 14 Bush, 210.)

It is suggested in the argument by counsel for appellee that the land was of the value of $600, and sold for only one ninth of its value.   The proceedings under which the sale was made have not been attacked by any pleading, and the case is in no condition to enable this court to pass upon such a question.

The judgment, for the reasons indicated, is reversed, and cause remanded for further proceedings consistent with this opinion.